USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 02/01/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**The Law Office of Philippe J. Gerschel,**

**Plaintiff,**

**-against-**

**New York City Department of Education,**

**Defendant.**

**1:24-cv-06303 (MMG) (SDA)**

**REPORT AND RECOMMENDATION**

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE MARGARET M. GARNETT, UNITED STATES DISTRICT JUDGE:**

In this action, Plaintiff, the Law Office of Philippe J. Gerschel ("Plaintiff" or "Gerschel"), as assignee, seeks to recover costs, expenses and attorneys' fees from Defendant, the New York City Department of Education ("Defendant" or "NYCDOE"), pursuant to the fee-shifting provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3), for 50 separate state administrative proceedings brought by parents involving the NYCDOE's denial of services to their children governed under Individualized Education Service Programs ("IESPs"), as well as the costs, expenses and attorneys' fees of this action. (Compl., ECF No. 1, at pp. 1, 107.) Pending before the Court is a motion by Defendant, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's Complaint. (Def.'s 10/21/24 Mot. to Dismiss, ECF No. 14; *see also* Def.'s 10/21/24 Mem., ECF No. 15, at 1, 7.)

For the following reasons, it is respectfully recommended that Defendant's motion be GRANTED.

## BACKGROUND

### I. The IDEA And Related New York Statutory Schemes

#### A. Free Appropriate Public Education ("FAPE") Requirement

"The [IDEA] requires States receiving federal funding to make a 'free appropriate public education' (FAPE) available to all children with disabilities residing in the State[.]" *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 232 (2009). "A FAPE consists of special education and related services tailored to meet the unique needs of a particular child, which are reasonably calculated to enable the child to receive educational benefits and provided in conformity with an individualized education program, or IEP." *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 214 (2d Cir. 2014) (cleaned up) (citations omitted).

The IDEA further requires that any state or local educational agency that receives federal funds "shall establish and maintain procedures in accordance with [20 U.S.C. § 1415] to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] by such agencies." 20 U.S.C. § 1415(a); *see also* 20 U.S.C. §§ 1415(f), (g) (describing the IDEA's impartial hearing and appeal process). "A school district meets its obligations to provide a FAPE by creating an IEP that is developed in compliance with the IDEA's procedural and substantive requirements." *N.B. v. New York City Dep't of Educ.*, 711 F. App'x 29, 32 (2d Cir. 2017).

"Since New York State receives federal funds under [the] IDEA, it is obliged to comply with the requirements of [the IDEA]." *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 123 (2d Cir. 1998). "Under New York law, local Committees on Special Education ('CSEs') are responsible for developing appropriate IEPs." *Reyes*, 760 F.3d at 214–15 (citing N.Y. Educ. Law § 4402(1)(b)(1)).

To comply with the IDEA's procedural requirements, New York State has implemented a two-tier system of administrative review. *See* N.Y. Educ. Law §§ 4404(1)-(2). "At the first level of review, an impartial hearing officer ('IHO') appointed by the local board of education conducts a due process hearing." *M.M. ex rel. J.M. v. New York City Dep't of Educ.*, No. 09-CV-05236 (PAC), 2010 WL 2985477, at *2 (S.D.N.Y. July 27, 2010). "Following the decision of the IHO, an aggrieved party may appeal to a state review officer ('SRO')." *Id*. (citing N.Y. Educ. Law § 4404(2)). "After exhausting this two-step administrative process, any party still aggrieved may bring a civil action challenging the decision in federal or state court." *Id*. (citations omitted).

**B. <u>Parentally-Placed Private School Students</u>**

"The IDEA contains a separate framework [from the FAPE framework] for disabled children who are parentally-placed in private schools[.]" *E.T. v. Bd. of Educ. of Pine Bush Cent. Sch. Dist*., No. 11-CV-05510 (ER), 2012 WL 5936537, at *10 (S.D.N.Y. Nov. 26, 2012). For parentally-placed private school students, the IDEA "requires states to 'allocate a proportional share of federal IDEA funds to provide special education and related services to parentally-placed private school children.'" *Id*. (citing *J.S. v. Scarsdale Union Free Sch. Dist*., 826 F. Supp. 2d 635, 665 (S.D.N.Y. 2011)); *accord R.G. v. N.Y.C. Dep't of Educ*., 585 F. Supp. 3d 524, 530 (S.D.N.Y. 2022). "Because the federal funds received by a state under the IDEA are only a fraction of the cost of educating a state's disabled children, children choosing to attend private school . . . [are] entitled as a group to only a proportionate amount of that fraction." *E.T.*, 2012 WL 5936537, at *10 (quoting *Russman v. Bd. of Educ. of City of Watervliet*, 150 F.3d 219, 221 (2d Cir. 1998)). "States are thus 'not obligated under the statute to expend their own funds on disabled children who have voluntarily enrolled in private school.'" *Id*. (quoting *Russman*, 150 F.3d at 221 (emphasis

omitted)). "Rather, states are required to provide [them] only those services that can be purchased with a proportionate amount of the federal funds received under the program." *Id*. (internal quotation marks omitted).

"Disabled children whose parents opt to place them in private school may therefore receive a different amount of services under the IDEA than those who remain in public schools." *E.T.*, 2012 WL 5936537, at *11 (citing 34 C.F.R. §§ 300.137, 300.138); *see also* 34 C.F.R. § 300.137(a) ("No parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school."). "The more limited services provided to parentally-placed children in private schools is commonly known as 'equitable participation,' and is distinct from the FAPE requirement." *E.T.*, 2012 WL 5936537, at *11 (cleaned up). "Equitable participation must also entail a 'plan that describes the specific special education and related services that the [local education agency] will provide to the child.'" *Id*. (citing 20 U.S.C. § 1412(a)(10)(A); 34 C.F.R. §§ 300.137(c), 300.138(b)). Federal regulations promulgated under the IDEA provide that the due process procedures relating to IEPs do not apply to these services plans. *See* 34 C.F.R. § 300.140(a)(1) ("[e]xcept as provided in paragraph (b) of this section,[1] the procedures in §§ 300.504 through 300.519 [*i.e.*, the due process procedures for FAPE cases] do not apply to complaints that [a school district] has failed to meet the requirements of §§ 300.132 through 300.139 [*i.e.*, regarding parental placements[2]], including the provision of services indicated on

---

[1] 34 C.F.R. § 340.140(b) relates to the IDEA's "'Child Find' obligation, which is a duty to identify, locate, and evaluate children who are suspected of having a disability and who are in need of special education and related services." *R.E. v. Brewster Cent. Sch. Dist.*, 180 F. Supp. 3d 262, 268 (S.D.N.Y. 2016).

[2] In the federal regulations, 34 C.F.R. §§ 300.130 to 300.144 apply to "Children With Disabilities Enrolled by Their Parents in Private Schools."

the child's services plan."). Instead, pursuant to 34 C.F.R. § 300.151, each state education agency must adopt written procedures for resolving complaints.[3]

"In New York, [a services plan for a parentally-placed private school student] is known as an Individualized Education Service Program, i.e., the IESP." *E.T.*, 2012 WL 5936537, at *11 (citing N.Y. Educ. Law § 3602-c(2)(b)). New York requires local CSEs to develop IESPs "in the same manner and with the same contents" as IEPs. N.Y. Educ. Law § 3602-c(2)(b)(1). Further, CSEs "shall assure that special education programs and services are made available to students with disabilities attending nonpublic schools located within the school district on an equitable basis, as compared to special education programs and services provided to other students with disabilities attending public or nonpublic schools located within the school district." *Id.* New York law also provides that the two-tier system of administrative review set forth in Section 4404 of the Education Law applies to IESPs. *See* N.Y. Educ. Law § 3602-c(2)(b)(1) ("Review of the recommendation of the [CSE] [regarding an IESP] may be obtained by the parent . . . of the pupil pursuant to the provisions of section forty-four hundred four of this chapter [*i.e.*, N.Y. Educ. Law § 4404]."). Thus, in New York, the same appeal procedures apply to IESPs as apply to IEPs. *See R.G.*, 585 F. Supp. 3d at 530 ("Pursuant to New York's implementation of [the] IDEA and the State's parental-placement program, the process for challenging an IEP or IESP is the same.") (citing N.Y. Educ. Law § 3602-c(2)(b)(1) & N.Y. Educ. Law § 4404).

---

[3] Responsibilities under the IDEA are divided between local education agencies (such as the NYCDOE), 20 U.S.C. § 1413(a), and state educational agencies (such as the N.Y. State Education Department), which exercise general supervisory authority. *Id.* § 1412(a)(11)(A).

## II. Relevant Facts

Gerschel successfully litigated 50 administrative proceedings on behalf of students with IESPs whose parents made demands upon the NYCDOE for attorneys' fees, which demands were not honored. (*See* Compl. ¶¶ 159-1251.) The parents, represented by Gerschel, prevailed at their respective impartial hearings by obtaining a Findings of Fact and Decision from the respective IHOs, who ordered relief demanded by each respective parent. (*Id*. ¶ 1254.) Each of the parents assigned their claims to IDEA fees and costs to Gerschel, in satisfaction of their respective debts for Gerschel's services. (*Id*. ¶ 1255.)

## III. Procedural History

On August 21, 2024, Plaintiff filed the Complaint in this action, seeking to recover the costs, expenses and attorneys' fees for the administrative proceedings, as well as the costs, expenses and attorneys' fees of this action. (Compl. at p. 107.) On October 21, 2024, Defendant filed the motion pending before the Court. (Def.'s 10/21/24 Mot. To Dismiss; Def.'s 10/21/24 Mem.) On November 21, 2024, Plaintiff filed its opposition. (Pl.'s 11/21/24 Opp'n Mem., ECF No. 16; Gerschel Decl., ECF No. 17.) On December 5, 2024, Defendant filed its reply. (Def.'s 12/5/24 Reply Mem., ECF No. 18.)

## RULE 12(b) LEGAL STANDARDS

"It is axiomatic that federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Reach Glob., Inc. v. Ridenhour*, No. 20-CV-00391 (AKH), 2020 WL 2319176, at *1 (S.D.N.Y. May 10, 2020) (internal citations omitted). "As federal courts have limited jurisdiction, it is 'presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record.'" *Pu v. Russell Publ'g Grp., Ltd.*, No.

15-CV-03936 (VSB), 2015 WL 13344079, at *2 (S.D.N.Y. Dec. 29, 2015) (quoting *Renne v. Geary*, 501 U.S. 312, 316 (1991)).

A defendant may move to dismiss a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A case may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In considering a motion under Rule 12(b)(1), the Court "'must accept as true all material factual allegations in the complaint' and should refrain from drawing argumentative inferences in favor of the party contesting jurisdiction." *Dickerson v. Mut. of Am.*, 703 F. Supp. 2d 283, 289 (S.D.N.Y. 2010) (quoting *Atlantic Mut. Ins. Co. v. Balfour Macclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992)). "However, the Court is not confined to the allegations in the Complaint," when resolving a motion to dismiss for lack of subject matter jurisdiction, *id.*, and "may refer to evidence outside the pleadings," *Makarova*, 201 F.3d at 113 (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)), including "affidavits and other materials beyond the pleadings to resolve the jurisdictional question." *Lehman v. Discovery Commc'n*, 217 F. Supp. 2d 342, 346 (E.D.N.Y. 2002) (citations omitted).

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding a motion to dismiss, the Court "must accept as true all of the allegations contained in a complaint[,]" but "[t]hreadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted); *see also Nguyen v. FXCM Inc.*, 364 F. Supp. 3d 227, 239 (S.D.N.Y. 2019) ("The Court need not accept as true, 'legal conclusions, deductions, or opinions couched as factual allegations.'") (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)).

**DISCUSSION**

Defendant seeks to dismiss this action on the grounds that "Plaintiff has failed to raise a claim that falls under the IDEA's fee shifting provision" and, thus, "this Court lacks subject matter jurisdiction to award the fees sought by Plaintiff." (Def.'s 10/21/24 Mem. at 5.) In the alternative, Defendant argues that Plaintiff's claims must be dismissed because Plaintiff is not a proper party to a fee-shifting action. The Court first addresses the parties' arguments regarding subject matter jurisdiction.

## I. Subject Matter Jurisdiction

In its Complaint, Plaintiff asserts federal question jurisdiction predicated upon 28 U.S.C. § 1331 on the ground that Plaintiff's claim arises under the IDEA. (Compl. ¶ 146.) Federal question jurisdiction exists when an action "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The IDEA provides that "[t]he district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy." 20 U.S.C. § 1415(i)(3)(A).

Defendant argues that the Court lacks subject matter jurisdiction because IESP cases are not "brought under" 20 U.S.C. § 1415.[4] (Def.'s 10/21/24 Mem. at 2-3.) "The phrase 'brought

[4] As the parties indicate, whether Plaintiff can state a claim under federal law is intertwined with the jurisdictional question. To the extent this question could be framed as raising a federal question, the Court recommends dismissal for failure to state a claim as set forth in Discussion Section II, *infra*.

under this section' refers to actions and proceedings 'brought under § 1415.'" *Vultaggio ex rel. Vultaggio v. Bd. of Educ.*, 343 F.3d 598, 602 (2d Cir. 2003) (quoting *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1028 (9th Cir. 2000)). "A 'proceeding brought under' § 1415 is a proceeding established by or referenced in § 1415." *Id.* (quoting *Megan C. v. Indep. Sch. Dist. No. 625*, 57 F. Supp. 2d 776, 783 (D. Minn. 1999)). "A proceeding is commenced under § 1415 by submitting a complaint pursuant to either § 1415(b)(6) or § 1415(k)." *Id.* "Section 1415(b)(6) gives parents of a child with a disability the 'opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.'" *Id.* (quoting 20 U.S.C. § 1415(b)(6)). Section 1415(k) "deals with issues regarding the placement of a child in an 'alternative educational setting.'" *Id.* (quoting 20 U.S.C. § 1415(k)).[5]

Plaintiff contends that, for each proceeding at issue in the Complaint, the family initiated an impartial due process hearing for denial of a FAPE under 20 U.S.C. § 1415 and New York's dual-enrollment statute (N.Y. Educ. L. § 3602-c) as part-time public school students. (Pl.'s 11/21/24 Opp'n Mem. at 5-6.) Although the right of parentally-placed private school students to a due process hearing stems from the dual enrollment statute, as discussed further below, Plaintiff argues that, when a school district violates § 3602-c it also violates the IDEA "since the IDEA requires States to have policies and procedures in place to ensure that all children are provided with a FAPE." (Pl.'s 11/21/24 Opp'n Mem. at 8 (citing 20 U.S.C. § 1412 (a)(1)(A)).) However, the

---

[5] This section, which allows a parent who disagrees with their child's placement to place the child in an appropriate private school and then seek tuition reimbursement, *see, e.g., C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 835 (2d Cir. 2014), does not apply here. (*See, e.g.*, Pl.'s 11/21/24 Opp'n Mem. at 14 & n.9.)

Second Circuit has rejected the argument that the IDEA's incorporation of state law is sufficient for federal question jurisdiction. In *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730 (2d Cir. 2007), the Second Circuit held that the district court lacked jurisdiction to review an SRO's determination that New York law entitled a parochial student to a one-on-one aide at the student's parochial school.[6] *See id*. at 733. The Circuit rejected the parties' argument that the IDEA's standard for a FAPE incorporated by reference all state standards even if the state regulations exceeded the minimum floor established by federal law. *See id*. at 734 ("Even assuming that IDEA incorporates the relevant New York Education Law, this does not provide an independent federal question that would sustain the court's jurisdiction."). The Circuit stated that "[a] federal statute is not a sufficient basis for federal question jurisdiction simply because it incorporates state law." *Id*. (citation omitted). The Circuit concluded that, the "case turn[ed] entirely on a state-law issue, and as such it [could not] form the basis of federal question jurisdiction." *Id*.

The Second Circuit also rejected the argument that "the IDEA's explicit authorization of a cause of action to be brought by 'any party aggrieved by the findings and decision' of the state educational agency *ipso facto* raise a federal question that would confer jurisdiction in this case on a federal court." *Bay Shore*, 485 F.3d at 734 (quoting 20 U.S.C. § 1415(i)(2)(A)).[7] The Circuit explained that "[t]he Supreme Court generally has followed Justice Holmes' classic formulation

---

[6] The parties in *Bay Shore* did not dispute that there was no such right under the IDEA. *See Bay Shore*, 485 F.3d at 733. The Court notes that New York law did not utilize the term IESP until 2007. *See* 2007 Sess. Law News of N.Y. Ch. 378 (S. 6361).

[7] The Circuit further found that IDEA's jurisdictional provision could not "save the parties' inability to establish federal question jurisdiction." *See Bay Shore*, 485 F.3d at 735; *see also id.* at 736 ("We decline, however, to construe 20 U.S.C. § 1415(i)(2)(A) to permit an issue of state law to be challenged in federal court independent of a federal question.")

that, '[a] suit arises under the law that creates the cause of action[,]'" *Id.* (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)), but "has recognized a narrow exception . . . where a formally federal cause of action does not create *ipso facto* a federal question 'because of the overwhelming predominance of state-law issues.'" *Id.* at 735 (quoting *Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 814 n.12 (1986)). Although the "IDEA provide[d] a floor" for the benefits that a state must provide, the Circuit reasoned, it does not regulate states' ability "to impose additional requirements on their schools if they so choose." *Id*. at 735.[8] Thus, the Circuit concluded that "[t]he determination whether New York law compels the School District to provide the one-to-one aide at a parochial school is a question best left to New York courts."[9] *Id*.

The Court finds that the present case is analogous to *Bay Shore* in that it involves rights granted entirely under state law, and thus, no federal question is presented. The authority relied upon by Plaintiff underscores that students' rights to the services and procedural safeguards at issue here are a creature of state law. For example, Plaintiff cites to an Office of State Review ("OSR") decision in which the SRO rejected the school district's argument that the IHO erred in applying the FAPE standard, not because the IHO found that the FAPE standard applied to a

[8] The Court notes that at least one other Circuit has held differently. *See Special Sch. Dist. No. 1, Minneapolis Pub. Sch. v. R.M.M. by & through O.M.*, 861 F.3d 769, 778 (8th Cir. 2017) ("When a state provides for educational benefits exceeding the minimum federal standards the state standards are thus enforceable through the IDEA.") (cleaned up).

[9] Following the Second Circuit's Opinion, the school district filed a petition in New York state court seeking to vacate the determination of the SRO, the trial court denied the petition, the Appellate Division affirmed and the New York Court of Appeals affirmed, applying Section 3602-c of the New York Education Law. *Bd. of Educ. of Bay Shore Union Free Sch. Dist. v. Thomas K.*, 14 N.Y.3d 289, 292-93 (2010). Tellingly, it is this decision from a New York state court that Plaintiff cites in arguing that dually enrolled students have due process rights under the IDEA. (Pl.'s 11/21/24 Opp'n Mem. at 8.)

student with IESP, but because the SRO found that application of the "equitable services standard" under the State's dual enrollment statute would not result in a different outcome and, thus, the district's argument amounted to a "distinction without a difference." (Pl.'s 11/21/24 Opp'n Mem. at 9 (citing OSR Appeal No. 21-245 at 11 n.11).[10]) Thus, although there is no dispute that, in New York, students with IESPs are entitled to equivalent rights as students with IEPs, those rights are granted by state law and not the IDEA.

The fact that the students in this case were part-time public school students under New York law[11] does not alter their status under federal law. Plaintiff attempts to circumvent the language in 34 C.F.R. § 300.137(a) that "[n]o parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school" by arguing that it does not apply to dually-enrolled students because they are, by definition, enrolled in public school. (Pl.'s 11/21/24 Opp'n Mem. at 14-15.) However, within the dichotomy set forth in federal law, students who formally are dually enrolled students under New York law remain children with disabilities enrolled by their parents in private school, to whom the regulations apply. *See supra* n.2. There is no merit to Plaintiff's suggestion that a state can imbue these students with greater rights as a matter of federal law. To the extent these students are entitled to a FAPE, or the equivalent thereof, based on their dual-enrollment status, that entitlement is governed by New York law.

---

[10] The decision in OSR Appeal No. 21-245 is publicly available at https://perma.cc/W49X-DF35.

[11] The Court notes that not all private school students are dually-enrolled. *See Bd. of Educ. of Monroe-Woodbury Cent. Sch. Dist. v. Wieder*, 72 N.Y.2d 174, 185 (1988) (§ 3602-c "affords an added double-enrollment option—rather than dictating the sole or presumptive means for affording services").

Similarly, with respect to the procedural safeguards set forth in 20 U.S.C. § 1415, the question is not, as Plaintiff contends, whether parentally-placed private school students are entitled to due process rights, but rather whether they are entitled to those rights under federal law. Again, the authority cited by Plaintiff underscores that they are not. For example, Plaintiff cites another OSR Appeal in which the SRO found that, because a student was considered a part-time public school student, the student was entitled to the due process procedures set forth in Education Law § 4404. (Pl.'s 11/21/24 Opp'n Mem. at 9-10 (citing OSR Appeal No. 24-388 at 8).[12]) But as Plaintiff explains, the SRO's rationale is supported by the interpretation of New York law. (*See id*.) The fact that New York law incorporates the standards set forth in 20 U.S.C. § 1415 does not change the fact that the procedural safeguards are guaranteed to parentally-placed private school students only through state law.

For these reasons, the Court finds that, under *Bayshore*, there is no federal question presented. Accordingly, it is respectfully recommended that this action be dismissed for lack of subject matter jurisdiction.[13]

## II. <u>Failure To State A Claim</u>

Even assuming, *arguendo*, that the Court had subject matter jurisdiction over this action, Plaintiff's Complaint should be dismissed for failure to state a claim, since Plaintiff's clients are

---

[12] *See* Application of a STUDENT WITH A DISABILITY, OSR Appeal No. 24-388 (Oct. 23, 2024), *available at* https://perma.cc/NF52-8LAD.

[13] The Court is mindful that attorneys' fees have been awarded in this Court in at least one case with respect to fee claims for students with IESPs. *See A.G. v. New York City Dep't of Educ*., No. 20-CV-07577 (LJL), 2021 WL 4896227, at *11 (S.D.N.Y. Oct. 19, 2021), *aff'd sub nom. H.C. v. New York City Dep't of Educ*., 71 F.4th 120 (2d Cir. 2023) However, in that case, the issue of subject matter jurisdiction was not raised, and the parties did not dispute the plaintiff's entitlement to fees. *See id*. at *3 n.2 ("Defendant does not dispute that Plaintiff is a prevailing party, entitled to an award of attorneys' fees.").

not entitled to costs and attorneys' fees under 20 U.S.C. § 1415, which is the statute upon which Plaintiff relies. The statute provides that "[i]n any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i)(I). As set forth above, "[a] 'proceeding brought under' § 1415 is a proceeding established by or referenced in § 1415." *Vultaggio*, 343 F.3d at 602.

Subpart (a) of 20 U.S.C. § 1415 provides that "[a]ny State educational agency, State agency, or local educational agency . . . shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education [*i.e.*, a FAPE] by such agencies." 20 U.S.C. § 1415(a). The term "free appropriate public education" is defined to mean:

> [S]pecial education and related services that— (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with the individualized education program [*i.e.*, the IEP] required under section 1414(d) of this title.

20 U.S.C. § 1401(9). Section 1414(d) contains the requirements for IEPs. *See* 20 U.S.C. § 1414(d).

"It is axiomatic that the plain meaning of a statute controls its interpretation." *United States v. Davis*, 648 F.3d 84, 89 (2d Cir. 2011) (quoting *Lee v. Bankers Trust Co*., 166 F.3d 540, 544 (2d Cir. 1999)). In the present case, the parents who assigned their claims to Plaintiff placed their children in private schools. In their state administrative proceedings, Plaintiff's clients received due process procedures regarding their IESPs pursuant to New York statutory law, *i.e.*, N.Y. Educ. Law § 3602-c(2)(b)(1), and did not receive due process procedures regarding IEPs, pursuant to 20

U.S.C. § 1415. Thus, the state administrative proceedings brought by these parents challenging the services provided to their children were not "brought under" § 1415, and Plaintiff cannot recover costs and attorneys' fees under § 1415.[14] *See Vultaggio*, 343 F.3d at 603 (finding that proceeding was not a "proceeding brought under" § 1415 based upon "plain meaning of § 1415(i)(3)(B)," as well as regulations). Accordingly, even if subject matter jurisdiction exists, the Court recommends that this action be dismissed because Plaintiff fails to state a claim for relief under 20 U.S.C. § 1415.[15, 16]

[14] The federal regulations implementing the IDEA provide additional support for the conclusion that the proceedings brought by the parents in this case were not brought under § 1415. The regulations provide that the due process procedures relating to IEPs do not apply to IESPs. *See* 34 C.F.R. § 300.140(a)(1).

[15] In making its recommendation, the Court expresses no view as to whether Plaintiff would be entitled to fees and costs as a matter of New York state law.

[16] Because the undersigned finds that Plaintiff does not have a cause of action under the IDEA, this Report and Recommendation does not address Defendant's alternative argument that Plaintiff is not a proper party because the parents' claims for attorneys' fees under the IDEA could not properly be assigned to him. (*See* Def.'s 10/21/24 Mem. at 5-7.) The Complaint alleges that "[t]he parents represented by [Plaintiff] have each assigned their claims to IDEA fees and costs under 20 U.S.C. § 1415(i)(3) to [Plaintiff] for collection of such fees in satisfaction of their respective debts for the above legal services." (Compl. ¶ 1255.) In opposing Defendant's motion to dismiss, Plaintiff states that "Plaintiff's prevailing party clients appropriately assigned their claims (as permitted by New York law) to Plaintiff and there were no deficiencies in effecting the assignments[.]" (Pl.'s 11/21/24 Opp'n Mem. at 20.) However, Plaintiff has failed to file with its pleading or opposition papers copies of the assignment documents, which are integral to the Complaint. Thus, even if the Court were to consider Defendant's alternative argument regarding assignability, it should order Plaintiff to produce the assignment documents before rendering any decision on assignability. *See Sorenson v. MBI, Inc.*, No. 3:16-CV-02029 (KAD), 2019 WL 3231762, at *1 (D. Conn. July 18, 2019) (in context of motion to dismiss, court ordered plaintiff to produce document integral to Complaint).

**CONCLUSION**

For the reasons set forth above, it is respectfully recommended that Defendant's motion to dismiss be GRANTED.

Dated: New York, New York
February 1, 2025

______________________________
**STEWART D. AARON**
**United States Magistrate Judge**

* * *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Garnett.

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).